UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANCIENT BRANDS, LLC.,

       Plaintiff,                               Case No: 18-11647

v.                                                Hon. Sean F. Cox.

PLANET STUFF, LLC, and
HOWARD B. GOLDMAN

       Defendants

_____/

## ORDER DENYING DEFENDANT GOLDMAN'S AMENDED MOTION TO DISQUALIFY HONIGMAN, MILLER, SCHWARTZ, AND COHN, LLP (ECF No. 15)

Plaintiff's attorney is from Honigman. Before Plaintiff filed its Complaint, Defendant Howard B. Goldman met with other Honigman attorneys to discuss hiring them for a different litigation and to sell some of his businesses. Goldman alleges that, during these discussions, he disclosed confidential information about his business model, and that this information is relevant to this action. Now, Goldman seeks to disqualify Honigman because it has a conflict of interest with him, either as a former client or as a prospective client. The Court heard oral arguments on this motion on October 18, 2018.

For the reasons below, the Court will DENY Goldman's motion to disqualify.

## BACKGROUND

**I.**    **Generally**

Plaintiff Ancient Brands sells dietary supplements that adhere to the "foundational nutritional principles" that have "best served human health and wellness needs throughout history." Compl. ¶

1

19, 21. Ancient Brands has established trademarks and trade dress for these supplements, which "are associated with a single source in the minds of the consuming public, and Ancient Brands has developed substantial and valuable goodwill in its [trademarks and trade dress]." *Id.* at ¶ 33.

Ancient Brands requires its authorized distributers to sign a Non-Diversion Agreement, which prohibits distributers from intentionally diverting Ancient Brands products to unauthorized retailers. *Id.* at ¶ 37, 39. The Agreement also prohibits distributers from selling Ancient Brands products on any e-commerce platform, including Amazon.com. *Id.* at ¶ 39.

This non-diversion policy is significant because Ancient Brands offers a 100% customer-satisfaction guarantee for its products when they are sold by authorized retailers or through Ancient Brands's online store. *Id.* at ¶ 42. After purchasing an Ancient Brands product from an authorized source, an unsatisfied customer has 60 days to return the product for a full refund. *Id.* at ¶ 42-43. This guarantee does not attach to Ancient Brands products sold by unauthorized sources because Ancient Brands has "no way to ascertain the authenticity, genuineness, or quality of such products." *Id.* at ¶ 44.

Sometime in 2017, Ancient Brands discovered that Defendant Planet Stuff, LLC, was selling products marked with Ancient Brands trademarks and trade dress on its Amazon store. Neither Planet Stuff nor its principal, Defendant Howard Goldman,[1] is an authorized distributer of Ancient Brands products. *Id.* at ¶ 48. As such, Defendants' products are not covered by the satisfaction guarantee and, therefore, are not authentic Ancient Brands products. *Id.* at ¶ 49.

Ancient Brands's counsel, Honigman, Miller, Schwartz, and Cohn LLP ("Honigman") sent

---

[1] Although the pleadings do not clearly establish the relationship between Goldman and Planet Stuff, at the hearing on this motion, defense counsel stated that Goldman is Planet Stuff's "principal."

a cease-and-desist letter to Defendants on November 26, 2017. *Id*. at ¶ 53. Defendants did not respond. *Id*. at ¶ 54. Honigman sent a second letter on February 15, 2018. *Id*. at ¶ 55. Again, Defendants did not respond. *Id*. Both of these letters were on Honigman's letterhead. (ECF No. 1-4, PageID 40; ECF No. 1-5, PageID 46)

On May 24, 2018, Ancient Brands filed its Complaint, alleging violations of the Lanham Act and tortious inference with a contractual relationship. Compl. ¶ 1. The parties are currently in discovery, which is set close on December 12, 2018.

**II. The Current Motion**

On September 4, 2018, Defendant Goldman filed this motion to disqualify Honigman from representing Ancient Brands. (ECF No. 15). Goldman argues that Honigman has a conflict of interest because he previously met with Honigman attorneys to discuss his other businesses and other pending litigation.

Goldman states that, in or about January 2017, he repeatedly met with Honigman attorney Joshua Opperer to discuss selling certain companies. Goldman Aff. ¶ 5-6. At the hearing on this motion, defense counsel stated that Planet Stuff was not a subject of these conversations. Instead, Goldman was interested in selling one of his other businesses, H&H Wholesale Services, Inc.. During these meetings, and in several e-mails and telephone conversations, Goldman says he "provided Opperer with extensive confidential information about how [he] conduct[s his] reselling business," so that Opperer could help market his companies. *Id*. at ¶ 7. Goldman does not say that these conversations led to a formal attorney-client relationship.

Goldman also states that, in 2017, he was sued by Abbott Laboratories ("the Abbott action"), and considered hiring Honigman attorney Jeffrey Lamb to file an indemnification suit against an

3

upstream distributer. *Id*. at ¶ 12. To this end, Goldman "sent numerous emails to Lamb containing confidential information, including but not limited to attorney-client privileged communications with [his] New York counsel" for the purpose of obtaining legal advice for the Abbot action and the possible indemnification suit. *Id.* at ¶ 13. He also had extensive phone calls with Lamb, during which he disclosed confidential information about how he conducts his reselling business. *Id*. at ¶ 14. Ultimately, Goldman "chose not to engage" Lamb for the indemnification suit. *Id*. at ¶ 15.[2]

**ANALYSIS**

I.  **Motions to Disqualify**

A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict of interest or breach of ethical duty by opposing counsel. *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d. 760, 770 (E.D. Mich. 2003). However, "motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp*., 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted).

Disqualification should only be utilized when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred. *Moses v. Sterling Commerce (America), Inc*., 122 F. App'x 177, 183-184 (6th Cir. 2005) (quoting *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991)). "The party seeking disqualification bears the burden of demonstrating

---

[2]Goldman also notes that he has "a long history with [Honigman], who has served as his counsel and/or counsel for companies he is involved with dating back many years, including in trademark related/re-selling matters in 2009, 2005, and earlier." Def.'s Mem. 2 (ECF No. 15, PageID 160). Goldman does not provide any more detail, and, at the hearing, defense counsel stated that these matters were not material to this motion.

4

specifically how and as to what issues in the case the likelihood of a prejudice will result." *Rymal v. Baergen*, 262 Mich. App. 274, 319; 686 N.W.2d 241 (2004). When confronted with a motion to disqualify, the court "must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988).

The Michigan Rules of Professional Conduct (MRPC) are the proper guidelines against which to measure the appropriateness of an attorney's conduct for the purpose of determining whether he should be disqualified. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated on other grounds*, 472 F.3d 436 (6th Cir. 2007).

## II. The Standard for Conflicts Arising from Former Clients

MRPC 1.9 governs conflicts of interest arising from a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation.

The Sixth Circuit applies a three-part test for disqualification pursuant to MRPC 1.9: (1) a past attorney-client relationship; (2) the subject matter of the prior attorney-client relationship is substantially related to the subject matter of the present action; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 889 (1990).

### A.     A Past Attorney-Client Relationship

Goldman does not argue that he ever had an express attorney-client relationship with Honigman. Rather, he argues that he had an implied attorney-client relationship. (ECF 21, PageID 456-457). To determine whether an implied attorney-client relationship existed, the Court must

focus on "the putative client's subjective belief that he is consulting a lawyer in his professional capacity, and on his intent to seek professional legal advice." *MJK Family, LLC v. Corporate Eagle Management Services, Inc.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009) (citations omitted). The Court must also determine "whether the purported client reasonably believes an attorney-client relationship has been created." *Id*.

### i. Selling H&H Wholesale (Opperer)

Based on Goldman's affidavit, he did not intend to seek legal advice when he supposedly provided confidential information about his other businesses to Opperer. Rather, he provided this information so that "Opperer could assist with marketing these companies." Goldman Aff. ¶ 7. Thus, Goldman has failed to establish that he reasonably believed he had an attorney-client relationship with Honigman at that time.[3]

### ii. The Indemnification Action (Lamb)

For the indemnification action, Goldman acknowledges that "[u]ltimately, [he] chose not to engage [Honigman]...." *Id. at* ¶15. This statement shows that, during Goldman's conversations with Lamb, he understood that Lamb was not his attorney.[4] Goldman was, admittedly, in the process of deciding whether or not to hire Lamb. Thus, Goldman has also failed to establish that he believed he had an attorney-client relationship with Honigman at that time.

For these reasons, the Court concludes that Goldman has not met *Dana*'s first prong.

---

[3]Moreover, given Goldman's "long history" with Honigman, the Court doubts that Goldman subjectively believed an attorney-client relationship existed when, apparently, no engagement letter was signed, no fee structure was formally discussed, and no fees were actually billed.

[4]This statement also shows that, as described in Footnote 3, Goldman *actually knows* how hiring a lawyer works.

6

### B. Substantially Related Subject Matter & Confidential Information

Moreover, Goldman has failed to show that he meets either the second or third prong of the *Dana* test. The Sixth Circuit has articulated a test for whether matters are substantially related that also incorporates the use of confidential information. As such, the Court will address the second and third *Dana* prongs together.

To determine whether the purported attorney-client relationships are substantially related, the Court "must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013); *See also U.S. ex rel. Guzall v. City of Romulus*, 2014 WL 5090856 at * 6 (E.D. Mich. 2014) (applying *Bowers*'s "substantial relationship" test to the MRPC). Thus, the Court "must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in [the attorney]'s prior representation [of the former client] would materially advance [the opposing party]'s position in the present case." *Bowers*, 733 F.3d at 653.

Although a former client has no obligation to specifically identify the confidential information he seeks to protect, *Atmosphere Hospitality Mgmt. Serv., LLC v. Royal Realties*, LLC, 28 F.Supp.3d 692, 698 (E.D. Mich. 2014), general information about business practices does not raise confidentiality concerns that mandate disqualification. *Marks One Car Rental, Inc. v. Auto Club Group Ins.*, 2014 WL 12721922 at *3 (E.D. Mich. 2014); *See also Quicken Loans v. Jolly*, 2008 WL 2566373 *5 (E.D. Mich. 2008); *Haworth, Inc. v. Wickes Mfg. Co.*, 1994 WL 16099352 (W.D. Mich. 1994) (finding, after an *in camera* review, that the information acquired by the law firm was much more akin to general information than to specific knowledge of facts pertaining to the

current lawsuit); *Int'l Paper Co. V. Lloyd Mfg. Co.*, 555 F.Supp. 125, 136 (N.D. Ill. 1982) (general knowledge of a company's inner workings acquired during another representation is not sufficient to warrant disqualification).

Here, Goldman has not given any details about what kind confidential information he provided to Honigman or how this information could be used against him. Although Goldman is not obligated to do so, he still bears the "burden of demonstrating specifically how and as to what issues in the case the likelihood of a prejudice will result." *Rymal,* 262 Mich. App. at 319. The only evidence offered by Goldman is his affidavit, wherein he states that he provided Opperer and Lamb with confidential information about how he "conducts his re-selling business." Goldman Aff. ¶ 6, 14. This disclosure appears to be general information about business practices, which does not amount to confidential information for the purposes of disqualification. For these reasons, the Court concludes that Goldman has not satisfied the second or third prong of *Dana*.

### III. Standard for Conflicts Arising from Prospective Clients

In the alternative, Goldman argues that, even if he does not satisfy *Dana*'s first prong by establishing a past attorney-client relationship, Honigman is still conflicted because he was a prospective client. (ECF No. 21, PageID 457 n.1).

This argument implicates the recently promulgated MRPC 1.18, which became effective on September 1, 2018. In full, MRPC 1.18 reads

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests

materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be **significantly harmful** to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

>(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>
>(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>
>>(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>>
>>(ii) written notice is promptly given to the prospective client.

(emphasis added)

MRPC 1.18 tracks Sixth Circuit precedent, which recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 Fed. App'x 29, 36 (6th Cir. 2004). Courts in this district have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp*. test." *Glenn v. Nasscond, Inc.* 2016 WL 409409 at *3 (E.D. Mich. Feb. 3, 2016).

Goldman has not satisfied the high bar of showing that the information he disclosed would be significantly harmful. As explained above, Goldman only provided information about how he

9

"conducts his re-selling business," Goldman Aff. ¶ 6, 14, which appears to be general business information. The Court does not see how general knowledge of Goldman's business model could be significantly harmful.

Second, it appears that Honigman has adequately screened Opperer and Lamb from this matter, pursuant to MRPC 1.18(d). Lamb was screened, and Goldman was notified of this screen, on August 31, 2018—the day before MRPC 1.18(d) actually imposed a screening obligation. (ECF No. 18-7, PageID 451). Opperer was screened on September 5, 2018, the day after Goldman filed the current motion and first notified Honigman of that potential conflict. (ECF No. 18-7, PageID 450). Given that MRPC 1.18 just went into effect, the Court concludes that Honigman complied with its ethical obligations.

## CONCLUSION

Goldman has failed to establish that he had an attorney-client relationship with Honigman or that he provided information that would raise confidentiality concerns. Goldman has also failed to show that, as a former prospective client, he would be significantly harmed by information he provided during his consultations with Honigman. For these reasons, the Court DENIES Goldman's Motion to Disqualify Honigman (ECF No. 15).

IT IS SO ORDERED.

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: November 9, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 9, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy<br>
Case Manager